UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MARCELLA K.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-00018-MJD-JPH |
| | ) | |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Claimant Marcella K. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. §§ 423(d), 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

I. Background

Claimant applied for DIB and SSI on February 23, 2018, alleging an onset of disability as of October 31, 2014. [Dkt. 16-5 at 3, 9.] Claimant's applications were denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Teresa A.

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

Kroenecke ("ALJ") on January 10, 2020. [Dkt. 16-2 at 34.] On March 18, 2020, ALJ Kroenecke issued her determination that Claimant was not disabled. *Id.* at 13. The Appeals Council then denied Claimant's request for review on November 5, 2020. *Id.* at 2. Claimant timely filed her Complaint on January 8, 2021, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, she "must provide a 'logical bridge' between the evidence and [her] conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

ALJ Kroenecke first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of October 31, 2014. [Dkt. 16-2 at 18.] At step two, the ALJ found that Claimant had the following severe impairments: "bilateral foot impairments, status-post surgeries." *Id*. at 19. At step three, the ALJ found that Claimant's impairments did not meet

or equal a listed impairment during the relevant time period. *Id.* at 21. ALJ Kroenecke then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs and never climb ladders, ropes, or scaffolds. She can tolerate no exposure to extreme heat, extreme cold, humidity, wetness, vibrations, or hazards, such as unprotected heights or dangerous moving machinery. She can tolerate occasional exposure to dusts, fumes, odors, gases, or other pulmonary irritants. She can occasional [sic] use foot controls with the bilateral lower extremities. She requires the opportunity to alternate into the seated position from the standing and/or walking positions every 30 to 45 minutes for two to three minutes while at the workstation.

*Id.* at 22.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period. *Id*. at 26. At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id*. at 27. Accordingly, ALJ Kroenecke concluded Claimant was not disabled. *Id.* at 28.

### IV.  Discussion

Claimant asks the Court to reverse ALJ Kroenecke's decision on the grounds that the ALJ erred in determining an RFC without first subjecting all of Claimant's medical evidence to expert scrutiny. [Dkt. 23.] Specifically, Claimant argues that, because "potentially-decisive and complex medical imaging" was gathered after the State agency consultants had reviewed her application and determined she was capable of performing light work, the ALJ should have re-submitted Claimant's case to a medical expert instead of unilaterally interpreting that evidence. *Id.* at 7-8. As explained below, the Court agrees with Claimant that the ALJ's decision must be reversed.

The Seventh Circuit has made clear that "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *cf. Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Stage v. Colvin*, 812 F.3d 1121, 1125-26 (7th Cir. 2016); *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). The reasoning for this rule is sound: without the benefit of an expert opinion, ALJs are simply not qualified to make their own medical determinations. *Akin*, 887 F.3d at 318; *see Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). This is especially important where a claimant's record contains "significant, new, and potentially decisive findings." *Stage*, 812 F.3d at 1125. To avoid this error, the regulations encourage ALJs to recontact a claimant's medical sources, request additional existing evidence, ask the claimant to undergo a consultative examination at the Agency's expense, and/or ask the claimant or others for more information. 20 CFR § 416.920b(b)(2); *Akin*, 887 F.3d at 318.

In July 2018, State agency consultant J. Sands, M.D., gave an initial determination that Claimant could perform light work with additional exertional and postural limitations. [Dkt. 16-3 at 39-44.] In November 2018, State agency consultant Shayne Small, M.D., reconsidered the evidence and affirmed Dr. Sands' initial determination. *Id.* at 55-59. In referencing these opinions, the ALJ noted that the "consultants were unable to review the entirety of the record," and "the evidence cited by the consultants . . . supports a greater degree of foot control and environmental limitations." [Dkt. 16-2 at 24.] Although the ALJ found the light exertional and postural limitations to be generally consistent with the longitudinal record of evidence, she found

5

the State agency opinions "not persuasive" to the extent they did not fully address many limitations borne out by the record. *Id.* at 25.

In June 2018, consultative examiner Harischandra Rathod, M.D., opined that claimant could "perform activities involving sitting, standing, moving about, and carrying. or [sic] walking up and down steps . . . [but] may have some difficulty performing activities like kneeling, crawling, squatting, climbing ladders and scaffold [sic]." [Dkt. 16-7 at 254.] The ALJ thus found "the general assessment that [C]laimant had postural limitations . . . persuasive." [Dkt. 16-2 at 25.] However, the ALJ noted that "the longitudinal record of evidence also supports a greater degree of exertional, sit and stand option, foot control, and environmental limitations than opined," and she therefore determined that, "to the extent these limitations were not fully addressed, this opinion is not persuasive in this matter." *Id.* at 25-26.

Here, it was appropriate for the State agency consultants to make a determination based on the limited evidence they had. *See* 20 CFR § 404.1516. However, since the time of the State agency reconsideration in November 2018, Claimant underwent two separate surgeries, one on each foot, and submitted more than 300 pages of documentation for the record. *See* [Dkt. 16-8; Dkt. 16-9]. Indeed, in April 2019, after complaining of continued and worsening pain in her feet, Claimant underwent an excision of a benign skin lesion, bilobed rotational flap closure, derotational skin plasty, hemiphalangectomy, midfoot ostectomy, and ostectomy of the fifth metatarsal head with condylectomy. [Dkt. 16-9 at 53.] Her postoperative diagnoses included three painful skin lesions, right fifth digit hammertoe with adductovarus, right midfoot dorsal exostosis, and right fifth metatarsal deformity with exostosis. *Id.* Then, in December 2019, Claimant again underwent a left foot excision of two skin lesions, left foot bi-lobe rotational flap, three left foot exostectomies, and a left fifth digit phalangectomy. [Dkt. 16-8 at 156.] Her

postoperative diagnoses included three left foot skin lesions, three left foot exostosis, and left fifth hammertoe. *Id.* Claimant's surgeons stated that "[c]onservative measures have failed." *Id.* Notably, in the second operative report, Claimant's surgeon stated that a "nerve was running directly over [a bone spur], which is probably why it was so painful." *Id.* at 156-57.

 Despite the ALJ acknowledging that the State agency doctors and consultative examiner "were unable to review the entirety of the record," [Dkt. 16-2 at 24], she failed to submit Claimant's surgery records to a medical expert for review.[3] This newly gathered evidence "contained significant, new, and potentially decisive findings" that "could reasonably change the reviewing physician[s'] opinion[s]." *Stage*, 812 F.3d at 1125. Therefore, the ALJ was obligated to seek additional medical opinion evidence. *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citing *Stage*, 812 F.3d at 1125; *Goins*, 764 F.3d at 680). Instead, ALJ Kroenecke unilaterally interpreted those surgical records from her lay perspective. *See Moreno*, 882 F.3d at 729 ("ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions."). Doing so constitutes reversible error.

 The Commissioner responds that reversal is inappropriate because the ALJ based her decision on substantial evidence. [Dkt. 24.] Specifically, the Commissioner argues that "[t]he

---

[3] In fact, Lelia Summers, P.A., reviewed Claimant's records from the surgical procedures performed on her right foot before providing a Physical Residual Functional Capacity Questionnaire in October 2019. [Dkt. 16-8 at 149.] In that report, P.A. Summers opined, in part, that Claimant can only sit or stand/walk for less than two hours each in an eight-hour working day, must walk every fifteen minutes for five minutes, and needs a job that permits shifting positions at will. *Id.* at 150–51. Notably, this was the only opinion reviewed by the ALJ that was produced **after** one of Claimant's foot surgeries. However, the ALJ found this opinion unpersuasive, reasoning that it was "inconsistent with the longitudinal record of evidence, which does not support the degree of . . . limitations opined." [Dkt. 16-2 at 25.] Regardless, not a single medical expert review Claimant's left foot surgeries.

ALJ considered not raw test data and images, but interpretation of these tests and images by Plaintiff's treatment providers." *Id.* at 12. At the start, this argument is unpersuasive because at no point in the ALJ's opinion was there any discussion of a medical expert's interpretation of the medical imaging or the Claimant's surgery. Additionally, the Commissioner seemingly argues that the doctors' determination that the imaging showed a "good reduction of the deformities" is enough to show that the ALJ had not "unilaterally interpreted" the medical record. *Id.* Again, this argument is unpersuasive. A finding of "good reduction of the deformities" is not synonymous with a curing or lessening of an otherwise severe impairment; the simple fact that imaging shows signs of improvement does not mean the condition has been completely erased or that the condition no longer requires workplace limitations. See *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not necessarily mean that she is capable of doing light work."); see also *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce."). Regardless, Claimant's 2019 surgical evidence remained wholly unaddressed by the State agency physicians, the consultative examiner, or any other medical expert.

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000); 20 CFR § 404.900(b). It was ALJ Kroenecke's "duty to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 111 (citing *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)). As such, the ALJ was required "to summon a medical expert . . . to provide an informed basis for determining whether the claimant is disabled." *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) (citing 20 CFR § 416.927(a)(3)). Indeed, the ALJ was "under an obligation to develop a 'full and fair record.'" *Thomas v. Colvin,*

745 F.3d 802, 807 (7th Cir. 2014) (citing *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)); *see* 20 CFR § 416.945(a)(3) ("[B]efore we make a determination that you are not disabled, we are responsible for developing your complete medical history."). Moreover, Claimant's burden was "to produce evidence, not opinions." *Kemplen v. Saul*, 844 Fed. App'x 883, 887 (7th Cir. 2021). If the ALJ "found this evidence insufficient, it was her responsibility to recognize the need for additional medical evaluations." *Scott*, 647 F.3d at 741. It seems obvious in this case that ALJ Kroenecke should have "obtained a medical opinion based on a complete record." *Stage*, 812 F.3d at 1126.

Ultimately, "it was the ALJ's responsibility to recognize the need for further medical evaluations of [Claimant's] conditions before making her residual functional capacity and disability determinations." *Suide v. Astrue*, 371 Fed. App'x 684, 690 (7th Cir. 2010). Indeed, without at least some reliance on medical opinions, substantial evidence is lacking from the ALJ's RFC determination. ALJ Kroenecke's failure in this regard constitutes reversible error because her non-referral of Claimant's new post-surgical records cannot provide the requisite logical bridge between the evidence and her conclusions. Remand is therefore necessary to correct these errors.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED AND REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  22 JUN 2022

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.